DORI ANN HANSWIRTH (admitted *pro hac vice*)
THERESA M. HOUSE (admitted *pro hac vice*)
HOGAN & HARTSON LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Facsimile:  (212) 918-3100
dhanswirth@hhlaw.com
tmhouse@hhlaw.com

AMY M. GALLEGOS (Cal. Bar No. 211379)
HOGAN & HARTSON LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
Telephone: (310) 785-4600
Facsimile:  (310) 785-4601
amgallegos@hhlaw.com

Attorneys for Defendants
FOX NEWS NETWORK, LLC and
NEWS CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| F. MARC SCHAFFEL PRODUCTIONS, LLC, a California limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> FOX NEWS NETWORK, LLC, a Delaware limited liability company; NEWS CORPORATION, a Delaware corporation; and DOES 1-10, inclusive, <br><br> Defendants. | Case No. CV10-00117 SJO (AGRx) <br><br> DEFENDANTS FOX NEWS NETWORK, LLC AND NEWS CORPORATION'S: <br><br> (1) NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6); AND <br><br> (2) MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE:        April 5, 2010 <br> TIME:        10:00 a.m. <br> COURTROOM:   1 - Otero |

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 5, 2010, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 1 of the above-entitled Court, located at 312 North Spring Street, 2nd Floor, Los Angeles, California 90012, defendants Fox News Network, LLC ("FNC") and News Corporation (together, "Defendants") will, and do hereby, move this Court for an order pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure dismissing the First Amended Complaint in its entirety, with prejudice and without leave to amend, for lack of standing and for failure to state a claim upon which relief may be granted, and awarding Defendants their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505 (the "Motion").

The Motion is made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, 17 U.S.C. § 505, and Local Rules 6.1 and 7-5.  The Motion is made on the following grounds:

1)      Plaintiff lacks standing to invoke this Court's subject matter jurisdiction because it does not own the copyrights to the allegedly infringed work.

2)      Plaintiff has failed to state a claim for copyright infringement because the complained-of use is a fair use not actionable as infringement.

3)      Plaintiff has failed to state a claim against News Corporation because it has failed to allege sufficient factual matter as required by *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 550 U.S. 544, 557, 167 L. Ed. 2d 929 (2007), *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), and their progeny.

Defendants concurrently submit a [Proposed] Order pursuant to Local Rule 52-4.1.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on February 25, 2010.

1    The Motion is based upon this Notice of Motion, the Memorandum of Points

2    and Authorities attached hereto, the Declaration of Dori Ann Hanswirth and

3    exhibits attached hereto, the Declaration of Theresa M. House, the Request for

4    Judicial Notice filed concurrently herewith, the First Amended Complaint, the

5    pleadings, records, and files herein, any argument that may be head at the hearing

6    on this Motion, and such other matters as the Court deems proper.

7

8    Dated:  March 5, 2010              Respectfully submitted,

9                                       HOGAN & HARTSON LLP

10

11                                      By:  s/Dori Ann Hanswirth

12                                           Dori Ann Hanswirth

13                                           *Attorneys for Defendants Fox News*
14                                           *Network, LLC and News Corporation*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................... 1

\\\NY - 096405/000084 - 1173744 v9

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alamuhammed v. Lee*
   202 F.3d 1227 (9th Cir. 2000) ............................................................................. 8

*Ashcroft v. Iqbal*
   129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................... 17, 18, 19

*Barnett v. Obama*
   --- F.Supp.2d ----, No. SACV 09-0082,
   2009 WL 3861788 (C.D. Cal. Oct. 29, 2009) ...................................................... 6

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................... 17, 18

*Blanch v. Koons*
   467 F.3d 244 (2d Cir. 2006) ............................................................................. 12

*Burnett v. Twentieth Century Fox Film Corp.*
   491 F. Supp. 2d 962 (C.D. Cal. 2007)............................................... 10, 11, 13, 15

*Burrow-Giles Lithographic Co. v. Sarony*
   111 U.S. 53, 4 S. Ct. 279, 28 L. Ed. 349 (1884) .................................................. 8

*Campbell v. Acuff-Rose Music, Inc.*
   510 U.S. 569, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994) ................................. 11

*Castellanos v. JPMorgan Chase & Co.*
   No. 09-CV-00969, 2009 WL 1833981 (S.D. Cal. June 23, 2009)..................... 17

*Community for Creative Non-Violence v. Reid*
   490 U.S. 730, 109 S. Ct. 2166, 104 L. Ed. 2d 811 (1989) .............................. 8, 9

*Cutler v. Enzymes, Inc.*
   No. C 08-04650, 2009 WL 482291 (N.D. Cal. Feb. 25, 2009)......................... 18

*Doe v. Unocal Corp.*
   248 F.3d 915 (9th Cir. 2001) ....................................................................... 17, 19

*Effects Assocs., Inc. v. Cohen*
   908 F.2d 555 (9th Cir. 1990)............................................................................... 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*
   499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) ................................. 6

ii

*Fisher v. Dees*
  794 F.2d 432 (9th Cir. 1986) ................................................................ 10

*Fogerty v. Fantasy, Inc.*
  510 U.S. 517 (1994) ........................................................................... 20

*Gladwell Gov't Servs., Inc. v. County of Marin*
  265 Fed App'x 624,
  No. 05-17327, 2008 WL 268268 (9th Cir. Jan. 28, 2008) .................................. 9

*Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*
  58 F.3d 1093 (6th Cir. 1995) ................................................................. 9

*Hustler Magazine Inc. v. Moral Majority Inc.*
  796 F.2d 1148 (9th Cir. 1986) .............................................................. 10

*In re California Title Ins. Antitrust Litigation*
  No. C 08-01341, 2009 WL 1458025 (N.D. Cal. May 21, 2009) ....................... 18

*Kelly v. Arriba Soft Corp.*
  336 F.3d 811 (9th Cir. 2003) ........................................................... 12, 14

*Kingman Reef Atoll Investments, L.L.C. v. United States*
  541 F.3d 1189 (9th Cir. 2008) ................................................................ 6

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S. Ct. 1673,
  1675, 128 L. Ed. 2d. 391 (1994) ............................................................. 6

*L.A. News Serv. v. CBS Broad., Inc.*
  305 F.3d 924 (9th Cir.) ............................................................... passim

*Leadsinger, Inc. v. BMG Music Publ'g*
  512 F.3d 522 (9th Cir. 2008) ............................................................... 10

*McConnell, Inc. v. Idearc, Inc.*
  No. 09-CV-00061, 2010 WL 364172 (S.D. Cal. Jan. 22, 2010) ....................... 17

*New Name, Inc. v. Walt Disney Co.*
  No. CV 07-5034, 2007 WL 5061697 (C.D. Cal. Dec. 3, 2007) ........................ 18

*Oddo v. Ries*
  743 F.2d 630 (9th Cir. 1984) ................................................................. 9

*Perfect 10, Inc. v. Amazon.com, Inc.*
  508 F.3d 1146 (9th Cir. 2007) .......................................................... 11, 15

*S.O.S., Inc. v. Payday, Inc.*
  886 F.2d 1081 (9th Cir. 1989) .................................................. 8

*Savage v. Council on American-Islamic Relations, Inc.*
  No. C 07-6076, 2008 WL 2951281 (N.D. Cal. Jul. 25, 2008) ................... passim

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*
  No. C 09-1468, 2009 WL 2157573 (N.D. Cal. Jul. 17, 2009) ................... 10

*Silvers v. Sony Pictures Entm't, Inc.*
  402 F.3d 881 (9th Cir. 2005) ................................................ 6

*Sony Corp. of Am. v. Universal City Studios, Inc.*
  464 U.S. 417, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984) ..................... 13

*United States v. Bestfoods*
  524 U.S. 51, 118 S. Ct. 1876, 141 L. Ed. 2d 43 (1998) .................... 16

*Warren v. Fox Family Worldwide, Inc.*
  171 F. Supp. 2d 1057 (C.D. Cal. 2001),
  *aff'd*, 328 F.2d 1136 (9th Cir. 2003) ...................................... 6

*Warren v. Fox Family Worldwide, Inc.*
  328 F.3d 1136 (9th Cir. 2003) ............................................... 6

*Winner Chevrolet, Inc. v. Universal Underwriters Ins. Co.*
  No. CIV. S-08-539, 2008 WL 2693741 (E.D. Cal. July 1, 2008) .............. 16, 17

*Yue v. Chordiant Software, Inc.*
  No. C 08-00019, 2009 WL 4931679 (N.D. Cal. Dec. 21, 2009) .................. 6


**CALIFORNIA CASES**

*Laird v. Capital Cities/ABC, Inc.*
  68 Cal. App. 4th 727, 80 Cal. Rptr. 2d 454 (3d Dist. 1998) ............... 17, 19


**FEDERAL STATUTES**

17 U.S.C. § 101 ............................................................... 9

17 U.S.C. § 107 ...................................................... 10, 11, 12, 14, 15

17 U.S.C. § 201 ............................................................. 8, 9

17 U.S.C. § 410(c) ................................................................................ 6

17 U.S.C. § 501(b) ................................................................................ 6

17 U.S.C. § 505 ................................................................................... 20


**OTHER AUTHORITIES**

Fed. R. Civ. P. Rule 12(b) ............................................................. 6, 10, 17

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3        Plaintiff F. Marc Schaffel Productions, LLC ("FMSP" or "Plaintiff") asserts

4    a single claim for copyright infringement against defendants Fox News Network,

5    LLC ("FNC") and News Corporation (together, "Defendants").  Plaintiff's claim is

6    based on FNC's use of edited excerpts from a 2003 interview of Deborah Rowe

7    Jackson ("Rowe"), former wife of Michael Jackson ("Jackson") and the mother of

8    two of his children, on FNC's cable news program, "Geraldo At Large."

9        Plaintiff alleges in its copyright registration, which it obtained on July 28,

10   2009, almost a month *after* the alleged infringement, that it owns the copyrights to

11   the Rowe interview (the "Rowe Interview") as a work for hire.  The Rowe

12   Interview was filmed by Jackson's videographer, Hamid Moslehi ("Moslehi") and

13   portions of it were broadcast by FNC's sister company, the FOX Broadcasting

14   Company ("FBC"), in a 2003 television special about Jackson (the "Fox Special").

15   When Moslehi sued Plaintiff for copyright infringement in previous litigation

16   involving the Rowe Interview, Plaintiff swore that it had nothing to do with its

17   copyrights.  Rather, it claimed that Moslehi had assigned all his copyrights to the

18   Rowe Interview and other footage to Jackson.

19       Now that Jackson has passed away and Plaintiff sees a money-making

20   opportunity, it claims for the first time that it owns the copyrights to the Rowe

21   Interview as a "work for hire."  Yet Plaintiff does not allege that the work was

22   created by FMSP employees, nor that it commissioned the work pursuant to written

23   work-for-hire agreements, despite that copyright law requires work-for-hire

24   agreements to be made before a work is created.  When counsel asked for such

25   documentation, Plaintiff's attorney refused to provide it.  Further, documentary

26   evidence shows that, at the time of the Fox Special, Fire Mountain Services, LLC

27   ("Fire Mountain"), a company owned by Jackson, controlled the copyrights to the

28   Rowe Interview.

\

1   　　　All of the above makes clear that Plaintiff does not have standing here.  But

2   even if it did have standing, its claim would still fail.  FNC transformed the Rowe

3   Interview by adding new expression and by using it for a different purpose from the

4   original.  This transformative use of a factual and historical work for criticism and

5   commentary on a news program is a fair use that is not actionable as copyright

6   infringement.  Plaintiff's claim against News Corporation should fail because

7   Plaintiff alleges no facts to indicate that News Corporation is responsible for any

8   alleged infringement.  Plaintiff's conclusory allegations attempting to pierce the

9   corporate veil are insufficient to withstand this motion.

10  **II.    FACTUAL BACKGROUND**[1]

11  　　**A.  The Parties and This Action**

12  　　　Plaintiff is a California limited-liability company.  (Compl. ¶ 6.)  FNC is the

13  owner and operator of the Fox News Channel, the number-one rated 24/7 national

14  cable television news network.  (*Id.* ¶ 7; Hanswirth Decl ¶ 2.)  News Corporation is

15  FNC's ultimate corporate parent.  (*Id.* ¶¶ 7-8; Hanswirth Decl. ¶ 2.)  FNC

16  cablecasts "Geraldo At Large."  (Compl. ¶ 12.)  FNC is an affiliated company with

17  FBC.  (Hanswirth Decl ¶ 2.)

18  　　　On or about January 7, 2010, FMSP filed its initial complaint in this action,

19  asserting a single claim for copyright infringement against FNC.  (Hanswirth Decl.

20  ¶ 3.)  Five days later, FMSP filed a first amended complaint (the "Complaint"),

21  _____

22  [1]　　Attached as Exhibits B - N to the Hanswirth Decl. are a true and correct copy of:
    Plaintiff's certificate of registration of copyright to the Rowe Interview from the United

23  States Copyright Office, referenced in Paragraph 2 of the Compl.; a DVD copy of the
    deposit copy of the Rowe Interview on file with the United States Copyright Office in

24  connection with the copyright registration referenced in Paragraph 11 of the Compl.; a
    certification of the deposit copy of the Rowe Interview issued by the United States

25  Copyright Office; FBC's copyright registration in the Fox Special referenced in Paragraph
    11 of the Compl.; a DVD copy of the July 5, 2009 edition of "Geraldo At Large"

26  referenced in Paragraph 12 of the Compl.; a DVD copy of the first 45:21 minutes of the
    Fox Special referenced in Paragraph 11 of the Compl.; a copy of FBC's registration of the

27  copyright to the Fox Special; news reports demonstrating public interest in the custody of
    Jackson's children; and papers filed or signed by Moslehi and FMSP in state and federal

28  litigations identified herein.  As documents referenced in the Compl., public records,
    newspaper reports, and court filings, Defendants respectfully request that the Court take
    judicial notice of these documents in their request for judicial notice, filed concurrently
    herewith.

adding News Corporation as a defendant.  (*Id.* ¶ 4.)

**B.  The Rowe Interview**

The Rowe Interview, which was filmed by Moslehi, consists of approximately three hours of Rowe discussing her life and her feelings about Jackson, the media, and her children.  (Compl. ¶ 11; Hanswirth Decl., Ex. C; Ex. I at ¶¶ 17, 20, 28-30, 46; Ex. K at ¶ 8.)  The Rowe Interview was filmed to rehabilitate Jackson's reputation after critical information from journalist Martin Bashir ("Bashir") was aired on a documentary called "Living With Michael Jackson."  (*Id.*, Ex. H at ¶¶ 16-17; Ex. I at ¶¶ 34, 37, 42.)  Portions of the Rowe Interview were published in the Fox Special, a rebuttal that aired a few weeks after the Bashir special, entitled, "The Michael Jackson Interview: The Footage You Were Never Meant to See."  (*Id.*, Ex. C, Ex. E, Ex. H ¶ 17, Ex. K; Compl. ¶ 11.)

**C.  The Geraldo Report**

After Jackson's death on June 25, 2009, there was considerable public interest in who would care for his minor children and news reports that Rowe may seek custody.  (Compl. ¶ 1; Hanswirth Decl., Ex. N.)  On July 5, 2009, FNC cablecast an edition of "Geraldo At Large" that included, in a series of at least eight reports on different news topics, a panel discussion on whether Rowe would be a suitable parent (the "Geraldo Report").  (Compl. ¶ 12; Hanswirth Decl., Ex. G.)

As part of that discussion, FNC edited excerpts of the Rowe Interview, wherein she spoke about her unconventional relationship with Jackson and the children (the "Excerpts").  (Compl. ¶ 12; Hanswirth Decl., Ex. G.)  In the Excerpts, Rowe discussed topics that bore on her suitability as a parent, including:  Why her children do not call her "Mom"; why the media considered her pregnancy to be "weird"; her feeling that giving birth was not "beautiful"; her decision to bear Jackson's children; her non-traditional relationship with Jackson and the children; her reaction to claims that she "left" her children; her role in asking that the children cover their faces in public; and her willingness to have additional children.

1   (Hanswirth Decl., Ex. G.)

2          FNC used the Excerpts to criticize and comment on Rowe's statements and

3   to denigrate her parental fitness.  (*Id.*)  Before and after the Excerpts were played,

4   the host expressed her own (negative) opinion of Rowe's statements.  (*Id.*)

5   Panelists also commented on Jackson's personal wishes; namely, that he did not

6   want Rowe to have custody.  (*Id.*)

7          The run time of the Excerpts was approximately 2 minutes, 58 seconds.  (*Id*.)

8   This comprises approximately 5 percent[2] of the hour-long "Geraldo At Large"

9   episode.  (*Id*. ¶ 8, Ex. G.)  All of the footage included in the Excerpts had been

10  aired before in the Fox Special.  (*See* Compl. ¶ 12; *compare* Hanswirth Decl., Ex. G

11  *with id.*, Ex. E.)

12         **D.   <u>Copyright Ownership of the Rowe Interview</u>**

13         FBC, which is FNC's sister company, owns the copyrights to the Fox

14  Special.  (*Id.* ¶ 2, Ex. F.)  FMSP is not listed anywhere in the FBC copyright

15  registration.  (*Id.*, Ex. F.)  FBC licensed the right to use the Rowe Interview from

16  Fire Mountain, a Jackson company.  (*Id.*, Ex. L, Ex. H ¶ 12.)  The licensing

17  agreement provides that Fire Mountain has sole control of all copyrights in the

18  Rowe Interview.  (*Id.*, Ex. L.)  It also does not mention FMSP.  (*Id.*)

19         In November 2004, FMSP filed suit in California State court against Fire

20  Mountain, Jackson, and another Jackson company, MJJ Productions, Inc. ("MJJ")

21  (the "Jackson Action"), claiming that they failed to pay FMSP for "producing" the

22  Fox Special.  (*Id.* ¶ 9, Ex. H.)  At that time, FMSP made no claim that it owned any

23  copyrights to the Rowe Interview.  (*See id.*)

24         In December 2004, Moslehi filed an action in this Court (the "Moslehi

25  Action") against Jackson, MJJ, FMSP, and FMSP's principal, F. Marc Schaffel

26  ("Schaffel").  (*Id.* ¶ 10, Ex. I.)  Moslehi asserted that he owned the copyrights to the

27

28  _____
    [2] Plaintiff claims that the Excerpts make up 10% of the total run-time of the Geraldo Report.
    (Compl. ¶ 12.)  Plaintiff is wrong.   The approximately 3-minute Excerpts comprise at most
    roughly 5% of the hour-long Geraldo Report.  (*See* Hanswirth Decl. ¶ 8, Ex. G.)

1   Rowe Interview and that FMSP and others infringed those rights.  (*Id.*)

2        FMSP and Schaffel submitted a joint answer to Moslehi's complaint on June

3   6, 2005 (the "FMSP Answer").  (*Id.*, Ex. J.)  In that answer, FMSP once again did

4   not contend that it had any copyright interest in the Rowe Interview.  (*See id.*)

5   Rather, FMSP claimed that Moslehi *had assigned his copyright to the Rowe*

6   *Interview to Jackson*.  (*Id.* at ¶¶ 5 (Moslehi "assigned all of [his] rights and

7   interests" in the Rowe Interview and other works "to Defendant Jackson"), 6

8   ("Plaintiffs have fully assigned all rights and interests to Mr. Jackson"), 7

9   ("Plaintiffs have no copyright interests in the subject properties as those were

10   assigned to Mr. Jackson"), 9 ("Plaintiffs fully assigned all of their rights and

11   interests in the materials, subject of the copyright cause of action, to Defendant

12   Jackson in February 2003"), 12 ("Plaintiffs have never made any claim of

13   ownership of the materials as they have always known, agreed to or acquiesced that

14   all rights to the materials were in Defendant Jackson"), 13 ("all of the materials"

15   were Defendant Jackson's).)  FMSP attached to the FMSP Answer a copy of an

16   agreement dated February 7, 2003 (the "Moslehi Assignment") among Moslehi,

17   Moslehi's company, MJJ, and Jackson.  (*Id.*)  On September 21, 2005, as part of a

18   motion for summary judgment and to avoid liability to Moslehi, FMSP submitted a

19   declaration by Schaffel stating that "[t]he assignments" had "nothing to do with

20   me."  (*Id.*, Ex. M.)

21        Four years later, however, Plaintiff whistled a different tune.  On July 28,

22   2009, *after* the Excerpts were cablecast by FNC, Plaintiff obtained a copyright

23   registration in the Rowe Interview as a "work for hire."  (*Id.*, Ex B.)  Plaintiff has

24   neither alleged, nor explained to counsel, how the Rowe Interview could possibly

25   be:  (1) owned by Plaintiff (as opposed to FBC, Fire Mountain, MJJ, or Moslehi);

26   and/or (2) a work for hire.  Plaintiff did not allege that the Rowe Interview was

27   created by FMSP employees, nor did it provide a copy of any work-for-hire

28   agreements when requested.  (*See generally* Compl.; House Decl. ¶ 2.)

## III.   THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF LACKS STANDING

To show copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358, 360 (1991).  Only the "owner of an exclusive right under a copyright" has standing in a claim for copyright infringement.  17 U.S.C. § 501(b); *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005).

### A.   Evaluating Standing on a Rule 12(b)(1) Motion

Standing is a jurisdictional requirement.  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139-40 (9th Cir. 2003).  Plaintiff bears the burden to demonstrate that it has standing to invoke the Court's subject matter jurisdiction.  *Barnett v. Obama*, --- F.Supp.2d ----, No. SACV 09-0082, 2009 WL 3861788, at *2-*3 (C.D. Cal. Oct. 29, 2009) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d. 391 (1994)).  Where plaintiff cannot show copyright ownership, the claim should be dismissed for lack of subject matter jurisdiction.  *Warren*, 328 F.3d at 1139-40.

A court considering a Rule 12(b)(1) motion may freely consider materials outside of the pleadings, including copyright registrations and contracts regarding the allegedly infringed work.  *See id.* at 1141 n.5; *Warren v. Fox Family Worldwide, Inc.*, 171 F. Supp. 2d 1057, 1062-63 (C.D. Cal. 2001), *aff'd*, 328 F.2d 1136 (9th Cir. 2003).  "[N]o presumptive truthfulness attaches to plaintiff's allegations."[3]  *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008) (citations omitted).  The court may resolve facts.  *Id.*

---

[3] Plaintiff's copyright registration, issued more than five years after first publication of the Rowe Interview, does not enjoy a presumption of validity.  *See* 17 U.S.C. § 410(c) (providing that only "the certificate of registration made *before or within five years after first publication of the work* shall constitute pima facie evidence of the validity of the copyright") (emphasis added); *Yue v. Chordiant Software, Inc.*, No. C 08-00019, 2009 WL 4931679, at *2 (N.D. Cal. Dec. 21, 2009).

6

### B. **Plaintiff Does Not Own the Copyrights to the Rowe Interview**

1. Plaintiff Has Admitted That Someone Else Owns the Copyrights

The factual record here, including Plaintiff's own prior sworn statements, indicates that person(s) or entities other than Plaintiff own the copyrights to the Rowe Interview. The only portions of the Rowe Interview at issue here are those published in the Fox Special, which is owned by FBC. (Compl. ¶¶ 11-12; Hanswirth Decl., Ex. C, Ex. E, Ex. F, Ex. G.) FBC's contract with Fire Mountain for permission to use the Rowe Interview provides that Fire Mountain "has sole control over all rights (including without limitation all copyrights)" to "3 hours of footage of an interview of Deborah Rowe . . . ." (Hanswirth Decl., Ex. L.) In Plaintiff's previous litigation against Fire Mountain and others involving the Fox Special, Plaintiff conspicuously failed to claim copyright ownership of the Rowe Interview. (*Id.*, Ex. H.)

Plaintiff has also disclaimed ownership of the copyright in the Rowe Interview in prior sworn statements. In the Moslehi Action, Moslehi alleged (1) that he was the sole owner of the copyright to the Rowe Interview and (2) that Plaintiff infringed his copyright. (*Id.*, Ex. I.) In response, FMSP did not claim that it had an ownership interest in the Rowe Interview. (*See generally id.*, Ex. J.) Rather, as set forth on page 5, above, it alleged, in no fewer than *six* of its affirmative defenses to Moslehi's infringement claim, that *Jackson* owned the copyrights in the works upon which Moslehi had sued, pursuant to written assignments of rights. (*Id.*) Moreover, Schaffel's sworn declaration admits that "[t]he assignments in question herein were between [Moslehi] and the Jackson Defendants, having nothing to do with me." (*Id.*, Ex. M.)

2. Plaintiff Cannot Demonstrate That It Owns
the Copyrights to the Rowe Interview as a Work For Hire

Plaintiff alleges that it owns the copyrights to the Rowe Interview as a "work for hire." (*Id.*, Ex. B.) The Complaint, however, does nothing to explain how

7

1   copyrights that Plaintiff previously swore had been assigned to Jackson could also

2   be owned by Plaintiff as a work for hire.  The reason is that these two positions are

3   impossible to reconcile.  Plaintiff cannot claim ownership of the Rowe Interview as

4   an employer of the people who contributed to the creation of the work; its prior

5   sworn statements make clear that Plaintiff was not Moslehi's employer *and* that

6   Moslehi had a copyright ownership interest in the Rowe Interview.  Nor can

7   Plaintiff claim ownership of the Rowe Interview as a specially commissioned work

8   for hire, for the simple reason that it does not have written work-for-hire

9   agreements with the authors of the work.

10          Copyright ownership initially vests in the author of a work.  17 U.S.C. §

11   201(a).  "To be an author, one must supply more than mere direction or ideas."

12   *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989).  Rather, an

13   "author" is someone "who actually creates the work, that is, the person who

14   translates the idea into a fixed, tangible expression entitled to copyright protection."

15   *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737, 109 S. Ct. 2166,

16   2171, 104 L. Ed. 2d 811 (1989).  An author is a person: who "'superintend[s]' the

17   work by exercising control"; who "has formed the picture . . . arranging the place

18   where the people are"; who is "the effective cause" or "the inventive or master

19   mind"; or who contributes significant "audience appeal" to the work or "creates, or

20   gives effect to the idea."  *Alamuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir.

21   2000) (citations omitted).  Photographers are authors of photographs.  *Burrow-Giles*

22   *Lithographic Co. v. Sarony*, 111 U.S. 53, 54, 4 S. Ct. 279, 28 L. Ed. 349 (1884).

23   Cinematographers are authors of films "[w]here the visual aspect of the movie is

24   especially important."  *See Alamuhammed*, 202 F.3d at 1232.

25          Both Rowe and Moslehi authored original expressions in the Rowe

26   Interview.  Rowe is the author of her words, and her words and visual appearance

27   comprise the audience appeal of the work.  Moslehi, as principal videographer, is

28   the person who "formed the picture" of the Rowe Interview.

For a company to own the copyrights in a work made under the circumstances present here, where non-employees (Rowe and Moslehi) create a specially commissioned work as part of a motion picture, the creators of the work and the hiring party must have executed written instruments specifying that the work is being made for hire.  17 U.S.C. §§ 101, 201(b).  The parties must reach those agreements *before* the work is created; agreements after the work is created cannot retroactively transform a work into a work for hire.  *Gladwell Gov't Servs., Inc. v. County of Marin*, 265 Fed App'x 624, 626, No. 05-17327, 2008 WL 268268, at *1 (9th Cir. Jan. 28, 2008) ("The plain language of the statute indicates that a work-for-hire agreement cannot apply to works that are already in existence.")

In the absence of a previous written work-for-hire agreement or an employment relationship, the work is *not* a work for hire, and the copyright vests in its creator.  *Reid*, 490 U.S. at 753.  "[W]here a non-employee contributes to a . . . movie . . . the exclusive rights of copyright ownership vest in the creator of the contribution, unless there is a written agreement to the contrary."  *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir. 1990); *see Oddo v. Ries*, 743 F.2d 630, 633-34 (9th Cir. 1984) ("a contribution to a collective work will be considered a work made for hire only if the parties expressly so agree in a written instrument").  Thus, where video footage is created by a non-employee cameraman in the absence of a written work-for-hire agreement, the copyright in the work does not vest in the hiring party, even where the owner of the hiring party claims that he directed, edited, or produced the footage.  *Hi-Tech Video Productions, Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1099 (6th Cir. 1995).

Plaintiff has refused to provide any documentation to support its claim that it owns the copyrights to the Rowe Interview as a work for hire.  (House Decl. ¶ 2.) Moreover, Plaintiff's prior admissions make clear that Plaintiff claims copyright ownership of the Rowe Interview when it thinks it can make money and disclaims ownership when it thinks it could cost it money.  FMSP has no standing, and its

1   Complaint should be dismissed with prejudice.

2   **IV.    THE USE OF THE EXCERPTS IS NON-ACTIONABLE FAIR USE**

3        FMSP's Complaint also fails because Defendants' alleged use of the Rowe

4   Interview is a fair use that is not actionable as infringement.  Section 107 of the

5   Copyright Act allows "fair" use of copyrighted material for purposes of criticism,

6   comment, news reporting, teaching, scholarship, and research.  17 U.S.C. § 107.

7   The fair-use doctrine allows reasonable copying of a work without the copyright

8   owners' consent.  *Fisher v. Dees*, 794 F.2d 432, 435 (9th Cir. 1986).  To evaluate

9   fair use, courts consider four factors: (1) the purpose and character of the use; (2)

10  the nature of the copyrighted work; (3) the amount and substantiality of the portion

11  used in relation to the copyrighted work as a whole; and (4) the effect of the use

12  upon the potential market for or value of the copyrighted work.  *Id.*

13       Where the facts are presumed to be true, a court may conduct a fair use

14  analysis as a matter of law on a motion to dismiss.  *See Leadsinger, Inc. v. BMG*

15  *Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008).  *See also Fisher*, 794 F.2d at 436

16  (where "the parties dispute only the ultimate conclusions to be drawn from the

17  admitted facts," the fair use judgment is "legal in nature" and is a question of law

18  for the court); *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1151

19  (9th Cir. 1986) (same); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp.

20  2d 962, 967 (C.D. Cal. 2007) (granting Rule 12(b)(6) motion to dismiss based on

21  finding of fair use); *Savage v. Council on American-Islamic Relations, Inc.*, No. C

22  07-6076, 2008 WL 2951281, at *4 (N.D. Cal. Jul. 25, 2008) (granting judgment on

23  the pleadings on finding of fair use); *Sedgwick Claims Mgmt. Servs., Inc. v.*

24  *Delsman*, No. C 09-1468, 2009 WL 2157573, at *4 (N.D. Cal. Jul. 17, 2009) ("the

25  Ninth Circuit has held that a defendant's 'assertion of fair use may be considered on

26  a motion to dismiss'") (citation omitted).  In this analysis, the Court may consider

27  exhibits referenced in the complaint and matters that may be judicially noticed.

28  *See, e.g., Burnett*, 491 F. Supp. 2d at 966 (judicial notice can be taken of television

1  program referenced in, but not attached to, complaint) (citing cases).  Defendants

2  have supplied the Court with a certified copy of the Rowe Interview on deposit with

3  the United States Copyright Office, and a true and correct copy of the Geraldo

4  Report that contained the Excerpts.

5  **A.    The Purpose and Character of FNC's Alleged Use Favors Fair Use**

6  The first factor addresses the "purpose and character of the use."  It addresses

7  "whether and to what extent the new work is 'transformative'"; i.e., "whether the

8  new work merely 'supersedes the objects' of the original creation, or instead adds

9  something new, with a further purpose or different character, altering the first with

10  new expression, meaning or message."  *Campbell v. Acuff-Rose Music, Inc.*, 510

11  U.S. 569, 579, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994) (citations omitted).

12  A finding that a use is transformative weighs strongly in favor of fair use.

13  *See, e.g., id.*; *L.A. News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 938 (9th Cir.), *as*

14  *amended*, 313 F.3d 1093 (9th Cir. 2002).  A work is transformative if it employs

15  quoted matter in a different manner or for a different purpose from the original.

16  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007)

17  (secondary work that uses original "in a different context" is transformative).  For

18  example, where an allegedly infringing work "can be characterized as involving

19  one of the purposes enumerated" in Section 107, such as "criticism, comment, [or]

20  news reporting . . . ," this factor favors a finding of fair use.  *See Campbell*, 510

21  U.S. at 578-79 ("The enquiry [concerning the first fair use factor] may be guided by

22  . . . looking to whether the use is for criticism, or comment, or news reporting . . .

23  ."); *L.A. News Serv.*, 305 F.3d at 940 ("news reporting" is "a favored purpose under

24  the statute").  Moreover, "the scope of fair use is broader when the information

25  relayed involves issues of concern to the public."  *Savage*, 2008 WL 2951281, at

26  *4.  *See Burnett*, 491 F. Supp. at 967 (the examples of fair use provided in the

27  preamble to Section 107 are "illustrative and not limitative").

28  In the context of criticism and commentary on the original work, direct

quotations from the original work are particularly conducive to fair use where "[t]o comment on plaintiff's statements without reference or citation to them would not only render defendants' criticism less reliable, but be unfair . . . ." *See Savage*, 2008 WL 2951281, at *6. Other factors that support a finding that a use is transformative include whether it adds something new by changing the original work, such as by altering the background, medium, and details of the original work. *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003); *Blanch v. Koons*, 467 F.3d 244, 253 (2d Cir. 2006) (use that changed colors, background, medium, size, and details is transformative).

Here, the use of the Excerpts as fodder for debate on the issue of Rowe's parental fitness after Jackson's death, an issue that was not at the forefront when the Fox Special was aired, is clearly a transformative use. The purpose of the original Rowe Interview was to counteract damage to Jackson's reputation from the Bashir special. By contrast, FNC's use of the Excerpts was to set forth evidence in the public debate over whether Rowe should have custody of the children after Jackson's death and to criticize and comment on Rowe's statements and physical expressions therein. Before and after the Excerpts were played, the host expressed her own opinion of Rowe's parental fitness and invited panelists to comment. FNC's use of direct quotations was appropriate for this purpose: To comment on Rowe's statements without reference to them would have made FNC's criticism less reliable. In this context, FNC's use of the Excerpts is precisely the kind that Section 107 encourages.

FNC also transformed the Rowe Interview by adding creative new expression. The original Rowe Interview is simply raw, unedited video of Rowe answering questions. The Excerpts, by contrast, include background music, use Rowe's words as part of a monologue, and alternate footage of her interview with photos or videos of Rowe, Jackson, and their children. These pictures and videos transformed the Rowe Interview by illustrating the subjects of Rowe's comments

1   (such as her children's past practice of donning masks in public) and by connecting

2   what she said in 2003 to the current subject of her fitness as a parent after Jackson's

3   death.  FNC used the Excerpts out of their original context.  The Excerpts truncated

4   portions of Rowe's original comments and FNC edited out material that was

5   extraneous to FNC's transformative purpose – such as Rowe's statements on her

6   relationship with Jackson, her reluctance to speak in public, the dissolution of her

7   marriage to Jackson, her fear of the media, her opinion of Jackson's sexuality, and

8   Jackson's relationships with their children.  The Excerpts are statements from Rowe

9   that bear on FNC's transformative purpose – her suitability to have custody of the

10   children after Jackson's death.

11          **B.     The Factual Nature of the Rowe Interview Favors Fair Use**

12          Because "some works are closer to the core of intended copyright protection

13   than others," the second fair-use factor evaluates "the nature of the copyrighted

14   work."  *Burnett*, 491 F. Supp. 2d at 969.  Fair use is favored where the underlying

15   work has already been published.  *L.A. News Serv.*, 305 F.3d at 940.  Likewise,

16   works that are informational, factual, or news video footage are strongly conducive

17   to a finding of fair use.  *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464

18   U.S. 417, 455 n.40, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984) ("[c]opying a news

19   broadcast may have a stronger claim to fair use than copying a motion picture");

20   *accord L.A. News Serv.*, 305 F.3d at 940  (that original work is factual and news

21   "clearly points t[o]" and "makes it a great deal easier to find fair use") (citation

22   omitted).  For example, in *L.A. News Serv.*, the Court of Appeals held that a

23   television news station's use of video footage of Reginald Denny's beating was fair

24   because it was "informational and factual and news" and "each characteristic

25   strongly favors" fair use.  305 F.3d at 940 (citation omitted).

26          Here, FNC only used portions of the Rowe Interview that were previously

27   published in the Fox Special, which favors fair use.  (Compl. ¶¶ 11-12; Hanswirth

28   Decl., Ex. E, Ex. G.)  Further, the Rowe Interview is an informational and factual

work.  (Hanswirth Decl., Ex. C.)  It is a record of Rowe's sentiments about her relationships with Jackson and her children.  (*See id*.)  It records not only what she said about her estranged relationship with her children at that time, but also her tone, facial expressions, and demeanor – and thereby shows the kinds of emotions she displayed when speaking about her children.  (*See id.*)  Because the Rowe Interview is a previously published historical record of these facts, the protections afforded by Section 107 apply more forcibly to FNC's use.

### C.    The Amount of FNC's Alleged Use of the Excerpts Is Reasonable

The amount and substantiality of FNC's use in relation to the work as a whole also favors fair use.  The inquiry for this factor turns on whether the quantity and value of the materials used are reasonable in relation to the purpose of the copying.  *L.A. News Serv.*, 305 F.3d at 941 (finding qualitative and quantitative use of original in secondary work fair where the portions of the original work selected "were closely tied" to the different subject matter of the secondary work).  Where a user copies as much as is necessary for his or her intended use, this factor will favor fair use.  *See Kelly*, 336 F.3d at 820-21.  Using "actual excerpts" of a work for comment and criticism is "[]reasonable" because it "reaffirm[s] the authenticity of the criticized statements and provide[s] the audience with the tone and manner in which [the subject] made the statements."  *Savage*, 2008 WL 2951281, at *6.

Here, FNC's use of the Excerpts incorporates approximately 2 minutes and 58 seconds out of the total Rowe Interview, which, based on the deposit copy on file with the United States Copyright Office, consists of approximately 178 minutes of videotape.  Use of such a quantitatively small percentage of the original work (approximately 1.7 percent) favors a finding of fair use.  *Savage*, 2008 WL 2951281, at *7 (use of "roughly four minutes," or roughly 3.3 percent, of a "two hour" radio show "strongly suggests that the amount used was small in relation" to the whole of the original work).

The Excerpts did not use more than is reasonably necessary for FNC's

14

1    purpose of criticizing and commenting on Rowe's statements.  The portions of the

2    Rowe Interview selected for the Excerpts were closely tied to the subject matter of

3    the commentary: Rowe's parenting skills in light of Jackson's death.  In light of this

4    purpose, FNC's use of the Excerpts was appropriate to show that the statements

5    were authentic and to allow the audience to evaluate Rowe's tone, manner, and

6    body language.

### D.    FNC's Use Does Not Harm the Market for the Original

8        The fourth fair use factor is "the effect of the use upon the potential market

9    for or value of the copyrighted work."  17 U.S.C. § 107(4).  This factor "requires

10   the court to weigh the benefit the public will derive if the use is permitted [against]

11   the personal gain the copyright owner will receive if the use is denied."  *Burnett*,

12   491 F. Supp. 2d at 971 (citations and quotations omitted).  In this inquiry, the

13   concern is not whether the secondary use suppresses or even destroys the market for

14   the original work or its potential derivatives.  *Id.*  Rather, the question is whether

15   defendant's secondary use is a market replacement for the original work.  *Id.*

16       Use of a work for a transformative purpose does not usurp the market for

17   licensing the work for traditional purposes.  *Perfect 10, Inc.*, 508 F.3d at 1168.  An

18   allegedly infringing use cannot "supercede [*sic*] the original as a market substitute"

19   where it "serves a different function" from the original work.  *Savage*, 2008 WL

20   2951281, at *9.  Applying this rule in the news and commentary context, where a

21   secondary use focuses on a different news event from the original, it does not

22   compete with the original and cannot harm its market.  *See L.A. News Serv.*, 305

23   F.3d at 942 (finding that the fourth factor "points in favor of fair use" where "Court

24   TV was not competing with LANS to show riot coverage, or even breaking news of

25   the same general type").

26       Where, as here, a plaintiff "fails to allege or suggest an impact on the actual

27   or potential sale, marketability, or demand for the original, copyrighted work," the

28   fourth factor favors a finding of fair use.  *Savage*, 2008 WL 2951281, at *9.  The

1  same is true where plaintiff "does not allege any attempts or plans to sell or license
2  the material or derivatives thereof." *Id.*

3      Here, Plaintiff does not allege any impact on the sale, marketability, or
4  demand for the Rowe Interview. (*See generally* Compl.) Nor could it: FNC's use
5  of the Excerpts is transformative, and the Excerpts were previously aired in the Fox
6  Special, the Excerpts do not compete with the work. Further, the public interest
7  additionally favors a finding of fair use because the purpose of FNC's use of the
8  Excerpts was for commentary of an issue of public concern, i.e., the welfare of
9  Jackson's children after his death. Because the fair-use factors favor FNC, the
10  Court should dismiss this action.

11  **V.    THE FACTS ALLEGED FAIL TO MAKE PLAINTIFF'S CLAIM**
12  <u>**AGAINST NEWS CORPORATION PLAUSIBLE**</u>

13      Plaintiff does not allege any specific acts by News Corporation. Nor has
14  Plaintiff pleaded any facts that suggest that News Corporation is liable for FNC's
15  actions. The allegations do not raise Plaintiff's claim above a speculative level; this
16  Court should dismiss Plaintiff's claim against News Corporation.

17  **A.  <u>Generally, a Parent Cannot Be Held Liable for Its Subsidiary's Acts</u>**

18      "[I]t is a general principle of corporate law deeply 'ingrained in our
19  economic and legal systems' that a parent corporation . . . is not liable for the acts
20  of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61, 118 S. Ct. 1876,
21  1880, 141 L. Ed. 2d 43, 51 (1998). There are two exceptions: "Parents may be held
22  liable for the acts of their subsidiaries where the subsidiary is merely an alter ego of
23  the parent, or where the subsidiary acts as the general agent of the parent." *Winner*
24  *Chevrolet, Inc. v. Universal Underwriters Ins. Co.*, No. CIV. S-08-539, 2008 WL
25  2693741, at *3 (E.D. Cal. July 1, 2008). To prove alter ego, a plaintiff must show:
26  "(1) a unity of interest and ownership . . . between two corporate entities such that
27  there does not exist a separateness between them; *and* (2) injustice would result if
28  the acts in question were treated as those of only one of the corporate entities." *Id.*,

2008 WL 2693741, at *3 (emphasis added). The alter ego test is "demanding." *McConnell, Inc. v. Idearc, Inc.*, No. 09-CV-00061, 2010 WL 364172, at *8 (S.D. Cal. Jan. 22, 2010).  To prove the agency theory, plaintiff must show "that a 'parent corporation *so controls the subsidiary* as to cause the subsidiary to become *merely* the agent or instrumentality of the parent.'"  *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 741, 80 Cal. Rptr. 2d 454, 463 (3d Dist. 1998) (citation omitted).

"An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations."  *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001).  Determining factors include whether: the parent "dictates every facet of the subsidiary's business"; the subsidiary is inadequately capitalized; the parent observes corporate formalities; the parent maintains a separate board of directors and its own officers; or the parent comingles funds with the subsidiary. *See id.*; *McConnell, Inc.*, 2010 WL 364172, at *8.  Where a complaint fails to allege factual matter showing how a parent was responsible for alleged unlawful acts of its subsidiary, it cannot survive a motion to dismiss.  *See Castellanos v. JPMorgan Chase & Co.*, No. 09-CV-00969, 2009 WL 1833981, at *11 (S.D. Cal. June 23, 2009).  *See also McConnell, Inc.*, 2010 WL 364172, at *8-*9.  Likewise, where plaintiff has not and cannot, in good faith, allege that injustice would result unless a parent corporation were joined as a defendant, the complaint cannot stand.  *See Winner Chevrolet, Inc.*, 2008 WL 2693741, at *3 (dismissing complaint without leave to amend against parent).

### B. Pleading Standards Require Plaintiff to Set Forth Sufficient Factual Matter, Apart From Bare Legal Conclusions, That States a Claim to Relief that is Plausible on Its Face

The United States Supreme Court has clarified the factual showing necessary to survive a motion to dismiss under Rule 12(b)(6).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed.

2d 929 (2007))).  For a claim to be "facially plausib[le]," the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

In applying this rule, "the tenet that a court must accept as true all of the allegations contained in a complaint is *inapplicable* to legal conclusions." *Id.* (emphasis added); *Twombly*, 550 U.S. at 555 (courts are "not bound to accept as true a legal conclusion couched as a factual assertion") (citation omitted).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949.  Formulaic recitations of the elements of a claim are "disentitle[d]" to the "presumption of truth," and may be disregarded by the Court.  *See id.* at 1951.  Once legal conclusions are set aside, "only a complaint that states a *plausible* claim for relief survives a motion to dismiss."  *Id.* at 1950 (emphasis added).

Where a plaintiff has failed to allege any "specific facts" related to a defendant's alleged infringement, the complaint cannot withstand a motion to dismiss.  *See Cutler v. Enzymes, Inc.*, No. C 08-04650, 2009 WL 482291, at *3 (N.D. Cal. Feb. 25, 2009); *New Name, Inc. v. Walt Disney Co.*, No. CV 07-5034, 2007 WL 5061697, at *3 (C.D. Cal. Dec. 3, 2007) (bare allegations of infringement insufficient).  Likewise, allegations that a parent "wholly owns and controls" its subsidiary, does business "through" that subsidiary, and used the subsidiary as its "principal, agent or joint venturer," without further factual averments, are to be disregarded.  *See In re California Title Ins. Antitrust Litigation*, No. C 08-01341, 2009 WL 1458025, at *8 (N.D. Cal. May 21, 2009).

The United States Supreme Court directs that a court should engage in a two-step process: (1) it should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"; and then (2) provided the complaint contains any remaining "well-pleaded factual allegations" at all, the court should "assume[] their veracity and then determine whether they

plausibly give rise to an entitlement of relief." *Iqbal*, 129 S. Ct. at 1940.

**C.  Plaintiff Does Not Allege Any Factual Matter Sufficient to Hold News Corporation Liable for Direct Copyright Infringement Nor For Any Alleged Infringement by Its Subsidiary**

Here, following *Iqbal*'s two-step process, Plaintiff's allegations do not state a plausible claim against News Corporation.

1.  Plaintiff's Allegations Can Be Disregarded as Formulaic Recitations of Legal Conclusions

Under *Iqbal*, the Court may begin by disregarding all of Plaintiff's allegations concerning "Defendants" contained in Paragraphs 16-20 of the Complaint, *i.e.*, that Defendants, in short, allegedly engaged in knowing infringement of Plaintiff's alleged copyright and caused damages thereby.  Each of those bare assertions consist of nothing more than a formulaic recitation of the elements of copyright infringement, and as such, are disentitled to any presumptive truth and must be disregarded in considering this motion to dismiss.

The Court should also disregard all of Plaintiff's boilerplate allegations in Paragraphs 8 and 10 of the Complaint, which state, in brief, that there is a "unity of interest and ownership between Defendant Fox and Defendant News Corp" and "any separateness of Defendant Fox and Defendant News Corp does not, and . . . did not exist," and that FNC acted as News Corporation's agent, employee, servant, co-venturer, and/or legal representative.  These conclusory allegations merely parrot the elements of law necessary to pierce the corporate veil.  *See Laird*, 68 Cal. App. 4th at 741-42, 80 Cal. Rptr. 2d at 463; *accord Doe*, 248 F.3d at 925-28.  As such, they should be ignored for this motion.  Further, these allegations are not an adequate alter ego allegation in the first place: the Complaint does not include even a conclusory allegation that injustice would result if News Corporation were not joined as a defendant, let alone factual support for such an assertion.

2.  The Remaining Allegations in Plaintiff's Complaint Do Not State a Claim for Copyright Infringement Against News Corporation

Having scrubbed Plaintiff's conclusory allegations regarding the elements of

1  copyright infringement and the standard for piercing the veil of a corporate parent,

2  Plaintiff's Complaint is left with no "factual matter" concerning News Corporation

3  that is relevant to Plaintiff's claim.  The remaining allegations contain absolutely *no*

4  reference to News Corporation itself engaging in any acts of copying the Rowe

5  Interview.  Nor does the Complaint offer any factual basis for holding News

6  Corporation responsible for any alleged acts of copying by its subsidiary FNC.  Nor

7  could Plaintiff in good faith so allege.  Because Plaintiff alleges absolutely no

8  factual matter that could render its claim against News Corporation "plausible," its

9  claim should be dismissed with prejudice.

10  **VI.   DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES**

11   Section 505 of the Copyright Act allows the prevailing party to recover costs

12  and "a reasonable attorney's fee."  17 U.S.C. § 505.  Section 505 applies to

13  prevailing defendants.  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534-35 (1994).

14   Defendants should recover attorneys' fees because Plaintiff's claim for

15  infringement is objectively unreasonable.  Plaintiff does not own the copyright in

16  the alleged infringed work – and it knew that from the start.  Moreover, FNC's use

17  was clearly fair, and Plaintiff has no basis upon which to sue News Corporation.

18  Accordingly, Defendants respectfully request that the Court order Plaintiff to pay

19  their reasonable attorneys' fees.

20  **CONCLUSION**

21   For these reasons, Defendants Fox News Network, LLC and News

22  Corporation respectfully request that this Court grant their Motion to Dismiss the

23  First Amended Complaint, with prejudice and without leave to amend, together

24  with costs, attorneys' fees, and such other relief as this Court deems appropriate.

25  DATED:   March 5, 2010   Respectfully submitted,
26     HOGAN & HARTSON LLP

27     By: s/Dori Ann Hanswirth
     DORI ANN HANSWIRTH
28     *Attorneys for Defendants Fox News Network,*
     *LLC and News Corporation*