Exhibit A to the
Reply Declaration of Dori Ann Hanswirth

KING, HOLMES, PATERNO & BERLINER LLP
HOWARD E. KING, ESQ., STATE BAR NO. 077012
BRIAN J. BIRD, ESQ., STATE BAR NO. 081614
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
E-MAIL:     KING@KHPBLAW.COM
E-MAIL:     BIRD@KHPBLAW.COM
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Plaintiff
F. MARC SCHAFFEL PRODUCTIONS, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| F. MARC SCHAFFEL PRODUCTIONS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>FOX NEWS NETWORK, LLC, a Delaware limited liability company; NEWS CORPORATION, a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. CV10-00117 SJO (AGRx)<br><br>**DECLARATION OF F. MARC SCHAFFEL IN SUPPORT OF PLAINTIFF F. MARC SCHAFFEL PRODUCTIONS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1) and 12(b)(6)**<br><br>Date:        May 3, 2010<br>Time:        10:00 A.M.<br>Courtroom:   1 – Otero |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## DECLARATION OF F. MARC SCHAFFEL

I, F. Marc Schaffel, do declare and state as follows:

1.     I am the owner and employee of F. Marc Schaffel Productions, LLC, a California limited liability company ("Schaffel LLC"). I have personal, first-hand knowledge of the facts set forth hereinbelow and if called upon to testify, could and would competently testify thereto.

2.     Commencing in January 1999, I entered into various business arrangements with Michael Jackson ("Jackson"). In June 2001, Jackson asked me to advise him and to work on various artistic and personal projects at his request.

3.     In or about fall of 2002, I became aware that Jackson was being interviewed by British journalist Martin Bashir ("Bashir") for a documentary depicting Jackson and various aspects of his lifestyle, residences, interactions with fans and the public in general and past events in his life and career. Martin Bashir was to conduct interviews with Jackson, as well as others in furtherance of the project.

4.     The project, comprised of Bashir's interviews, footage, comments and other materials was initially telecast worldwide on ABC in February 2003 and entitled "Living With Michael Jackson" (the "Bashir Special"). The Bashir Special was, in my opinion and that of others associated with Jackson, embarrassing to the reputation of Jackson. In discussions with Jackson, it was evident to me that Jackson was emotionally devastated over his portrayal in the Bashir Special and I though a rebuttal documentary should be produced.

5.     Jackson requested that I oversee creation, production and distribution of such a documentary to rebut the image portrayed of Jackson in the Bashir Special.

6.     In undertaking the task of producing the rebuttal documentary, I came up with the idea and asked to interview Debbie Rowe ("Rowe"), the former wife of Jackson, concerning her highly publicized relationship with Jackson.

7.     In furtherance thereof, Schaffel LLC and I obtained written permission from Jackson to arrange and produce "multiple" interviews with Rowe ("Rowe Interview") pursuant to the terms of a Memorandum of Acknowledgment, dated February 5, 2003 (the "Memorandum"), a true and correct copy of which is attached hereto as Exhibit "A" and incorporated herein by this reference.  The Memorandum provided, in part, that I was to have irrevocable full rights and ownership to "exploit, sell, publish, license, reproduce, re-use, assign, copyright, and distribute" the Rowe Interview.  Jackson also acknowledged that he, his marriage to Rowe, his children and Rowe's background and biography would be discussed in the Rowe Interview.

8.     In producing the Rowe Interview, I (i) formulated the types of areas of inquiry for questioning; (ii) wrote questions to be asked of Rowe; (iii) provided lighting and filming equipment for the interviews; (iv) filmed the interviews, having Hamid Moslehi ("Moslehi") and Christian Robinson ("Robinson") assist me; (v) edited the film footage generated by me, Moslehi and Robinson; and (vi) paid for services rendered by Moslehi and Robinson, among others.  The Rowe Interview consists of 178 minutes of videos, portions of which were broadcast in a television special presented by Fox Broadcasting Company ("FBC"), which I believe is a sister company of Fox News Network LLC ("Fox").  That broadcast was entitled "The Michael Jackson Interview: The Footage You Were Never Meant To See."  FBC paid $4 million in license fees for the right to broadcast the Fox Special.

9.     In utilizing the services of Robinson, I arranged for Robinson to execute certain agreements regarding work he did for me or Schaffel LLC including Non-Disclosure Agreements, dated January 31, 2001, March 12, 2001, August 7 and 8, 2001, true and correct copies of which are attached hereto as Exhibits "B," "C," "D" and "E" and incorporated herein by this reference.  Those agreements provide, among other things, that any proprietary rights or copyrights in the work performed by Robinson will belong to me or Schaffel LLC and were in effect during the

KING, HOLMES,
PATERNO
& BERLINER LLP

3005.064/339280.1                                3

1  filming of the Rowe Interview. As for Moslehi, he likewise worked for Schaffel

2  LLC in making the Rowe Interview.

3      10.    On July 5, 2009, Fox cablecast an edition of "Geraldo At Large" that

4  included excerpts of the Rowe Interview ("Excerpts"). Fox advertised and

5  promoted the broadcast using, in my opinion, the juiciest portions of the Excerpts.

6      11.    In causing my lawyers to file a Copyright Registration, I believed and

7  understood I had work for hire agreements with both Moslehi and Robinson relating

8  to the Rowe Interviews and thus, the registration was designated as same.

9      12.    I am aware that Fox News Network and News Corporation allege that

10  Moslehi has copyright in and to the Rowe Interviews and that they reference

11  pleadings and declarations in prior State Court actions in which I did not assert my

12  copyrights in and to the Rowe Interviews. In my action against Jackson and Fire

13  Mountain Services, LLC, I was seeking recovery in a breach of contract claim and

14  copyright issues never arose. In the action filed by Moslehi, Moesha was seeking to

15  recover for breaches of contract by Jackson and his entities and to the extent he

16  claimed a copyright in anything to do with the footage he shot for the Bashir

17  Special, he had assigned same to Jackson and MJJ Productions. Those rights, as far

18  as I knew, had been granted to Jackson and MJJ Productions. A true and correct

19  copy of that certain Assignment of Rights, dated February 7, 2003 is attached hereto

20  as Exhibit "F" and incorporated herein by this reference. Schaffel LLC's copyright

21  to the Rowe Interview was never an issue in that case.

22      13.    Just prior to the air date of the "Geraldo At Large" show, Schaffel LLC

23  had entered into licensing agreement with media outlets in the United States and

24  worldwide for the exhibition of the Rowe Interview. One licensor in the U.S.A.

25  paid a substantial sum for an exclusive first release of the footage, and several

26  worldwide outlets licensed said footage as well for outside the U.S.A. airings with

27  similar rights. (Due to confidentiality clauses in those agreements, I feel I cannot

28  disclose same in this Declaration.) I had personally contacted Fox's business affairs

KING, HOLMES,
PATERNO
& BERLINER LLP

1  office regarding licensing footage prior to the telecast of "Geraldo At Large." Fox
2  passed on wanting to air it. I am informed that additional licensing agreements may
3  have been obtainable but that the Fox broadcast of "Geraldo At Large" diminished
4  demand for such licenses.

5      I declare under penalty of perjury under the laws of the United States of
6  America that the foregoing is true and correct.

7      Executed this 16th day of March, 2010 at Los Angeles, California.

8
9                                    F. Marc Schaffel
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "A"**

**TO THE DECLARATION OF**

**F. MARC SCHAFFEL**

## MEMORANDUM AND ACKNOWLEDGMENT

    As I, Michael Jackson hereby agree and acknowledge that I grant F. Marc Schaffel & F. Marc Schaffel Productions LLC permission to arrange and produce multiple "interviews" with my former wife, Deborah Rowe. I fully understand the "interviews" will be conducted on videotape and distributed in all mediums worldwide. F. Marc Schaffel shall have the irrevocable full rights and ownership to exploit, sell, publish, license, reproduce, re-use, assign, copyright, and distribute these "interviews" when, and how he sees fit in perpetuity. I fully understand that topics such as me, our marriage, our children, and Deborah Rowe's background and biography will be discussed. I also fully understand these "interviews" along with photography may be published in tabloids, newspapers, magazines, and the video portions aired on multiple television shows worldwide, at F. Marc Schaffel's discretion.

    I further more hereby grant Deborah Rowe the ability to be interviewed by F. Marc Schaffel or any person he approves; and waive any provisions of confidentiality from our divorce decree preventing Deborah Rowe to speak publicly about the above topics. I fully understand I do not have any editorial control, or ownership of these "interviews" or the material that result from them. Deborah Rowe shall not be compensated by me for any of these "interviews" in any manner; and Deborah Rowe's participation is of her own free will.

    So Acknowledged and Agreed this February 5, 2003:

_____
Michael Jackson

7

**EXHIBIT "B"**

**TO THE DECLARATION OF**

**F. MARC SCHAFFEL**

# Non-Disclosure Agreement

By signing this document, I agree to all the terms of this Non-Disclosure Agreement (the "Agreement") as a regular employee or an independent contractor of Fredric M. Schaffel, AKA Fred Schaffel Productions, AKA Marc Fredrics, Marc Fredrics Productions, Blue Steele Productions, ( the "Company" ) . I understand that this Agreement is an important part of the consideration for my regular employment by the Company . I understand that , among other tasks, I may perform tasks related to the company's work for and on behalf of the Company's customers , and any and all of their affiliated , related , parent and subsidiary entities ( Collectively, " Customers ").

1. **Confidential Relationship.** I understand that I may be involved with information and materials of a highly sensitive nature which must be carefully protected . I further understand that my employment creates a relationship of confidence and trust between me and the Company and its Customers that requires me to treat with special care any information that is applicable to the business of the Company or the business of any Customers of the Company, whether I learn it from the Company or from any Customer of the Company, or from any other source, at any time during the period of my employment.

2. **Company and Customer Information and Material.** I recognize that the Company is engaged in producing and exploiting games,motion picture,and photographic material for its Customers. I recognize that the Company processes and will continue to possess valuable information that has been created, discovered, developed, or otherwise known by the Company ( including information, designs, marketing plans, images, logos, names, and other materials created , discovered or developed by me, or made known to me, as a result of my employment by the Company). I understand that the property rights and information that has commercial value in the business in which the Company is engaged have been assigned or otherwise conveyed or disclosed to the Company.

3. **Non-Disclosure.** During and after my employment by the Company, I agree that I will not disclose any of the information described in the preceding paragraph or any other trade secrets or proprietary information or material of the Company or its Customers ("Confidential Information") , to any person or entity other than as is necessary in carrying out my duties on behalf of the Company, without first obtaining the Company's prior written consent. I will take all reasonable precautions to prevent inadvertent disclosure of any Confidential Information.

4. **Assignment.** I hereby assign to the Company all rights I have or may acquire in Confidential Information. All Confidential Information will be the sole property of the Company and/or a particular Customer, and the Company or the particular Customer will be the sole owner of any patents , copyrights, trademarks, trade names, logos, designs, trade secrets and other propriety rights with respect to any and all work conceived or performed by me in the course of my employment. If requested by the Company or any of its Customers, I will execute a certificate of acknowledge of the foregoing assignment, and such other instruments or documents as the Company or its Customers may request to register, establish, maintain, perfect or defend the exclusive rights of the Company or its Customers in or to such materials. I recognize that the Company may from time to time assign such Confidential Information to one or more of its Customers. In the event I should render services to the Company in connection with any Customer's project while I am not working as a regular full-time employee of the Company on the Companies premises, I hereby assign to the Customer all worldwide rights, title and

9

interest in and to all patents, copyrights, trademarks, trade secrets and other materials created.

5.  **Non-Disclosure of Customer Information.** If requested by the Company, I will also hold strictly confidential the fact that I am rendering services for a particular Customer and all information and materials supplied by such Customer or created by the Company in connection with a Customer project. I understand that the Company has, by this agreement, specifically requested strict confidentiality with respect to any and all services, information and materials in connection with any and all of it's Customers' projects.

6.  **Return of all Material.** Except with the prior written consent of the Company, I will not at any time take or retain any computer disks or software, hardware, designs, drawings, plans, specifications, sketches, notes, brochures, reports, slides, videos, films, film material, proposals, files, manuals, lists of names, contracts or other documents for photographic or audio or video recordings, or reproductions of any of the above, or any other materials or equipment that belong to the Company or any of its Customers. Even if the Company does not so request, I will return and deliver all such property to the Company upon termination of my employment.

7.  **Employment At Will.** I understand that my employment with the Company is not for a specific term, and that it may be terminated with or without cause, and with or without advance notice, at the will of either myself or the Company. I understand that no agreement contrary to at-will employment has been made with me, and that no such agreement can be made with me unless it is in writing and signed by an authorized party on behalf of the Company. This Agreement does not change my at-will employment relationship, and the offering and execution of this Agreement does not constitute a guarantee or assurance of continued employment. I understand that failure to execute this Agreement may result in the termination of my employment or , if not yet hired , in a refusal to hire me. All offers of employment are conditioned on the execution of this agreement.

8.  **Injunctive Relief.** I agree that the Company will be entitled, without waiving any additional rights or remedies otherwise available to the Company at law, in equity or by statute, to injunctive and other equitable relief if I breach of intend or threaten to breach any of my promises set forth in this agreement.

9.  **Amendments.** I understand that this Agreement may not be altered or modified except by a writing signed by the both of us.

10. **Arbitration.** I understand that any controversy between us involving the construction or application of any of the terms, covenants or conditions of this Agreement will be submitted to arbitration in Los Angeles, California, on the request of either of us, and the arbitration will comply with and be governed by the provisions of the commercial arbitration rules of the American Arbitration Association.

11. **Attorneys' Fees.** In any dispute between us, whether or not resulting in arbitration, the party who substantially prevails will be entitled to recover from the other party all reasonable costs, including, without limitation, reasonable attorneys' fees.

12. **Counterpart Copies.** I understand that this Agreement may be signed in counterpart or duplicate copies, and any signed counterpart or duplicate copy will be equivalent to a signed original for all purposes.

10

13. **Entire Agreement.** I understand that this Agreement contains all representations and the entire understanding and Agreement between us. Correspondence, memoranda, and oral or written agreements that originated before the date of this Agreement are replaced in total by this Agreement unless otherwise expressly stated in the Agreement.

14. **Gender and Number.** As used in this Agreement, the masculine, feminine, or neuter gender, and the singular or plural number, will include the others whenever the context indicates.

15. **Governing Law.** This Agreement will be governed by and construed according to the laws of the State of California and this Agreement was made and performed in California.

16. **Headings.** The titles and headings of the various sections of this Agreement are intended solely for the convenience of reference and are not intended to explain, modify or replace any construction on any of the provisions of this Agreement.

17. **No Waiver.** I agree that if either of us fails to insist on the strict performance of any covenant or duty required by this Agreement, or to pursue any remedy under this Agreement, such failure will not constitute a waiver of the breach or the remedy.

18. **Cumulative Remedies.** I agree that the remedies under this agreement are cumulative and shall not exclude any other remedies to which either of us may be lawfully entitled.

19. **Severability.** If any part of this Agreement is determined to be illegal or unenforceable, all other parts will remain in effect.

20. **Full Understanding.** I have carefully read and fully understand all the provisions of this Agreement and I am voluntarily entering into this Agreement with full knowledge of any rights that I may be waiving.

21. **Construction.** I understand that this Agreement has been negotiated and approved by the both of us and, notwithstanding any rule or maxim of construction to the contrary, any ambiguity or uncertainty in the Agreement will not be construed against either of us based upon authorship of any of the provisions hereof.

Dated: 1/31/01

Signed: _____

Print Name: CHRISTIAN ROBINSON

SS#: 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

**EXHIBIT "C"**

**TO THE DECLARATION OF**

**F. MARC SCHAFFEL**

## Non-Disclosure Agreement

By signing this document, I agree to all the terms of this Non-Disclosure Agreement (the
"Agreement") as a regular employee or an independent contractor or confident of Fredric Marc
Schaffel, AKA Fred Schaffel Productions, AKA Marc Schaffel, Hidden Light Productions, Dream
Theater, (the "Company"). I understand that this Agreement is an important part of the
consideration for my involvement whether as an employee, independent contractor, consultant, or
any role by the Company. I understand that, among other tasks, I may perform tasks related to
the Company's work for and on behalf of the Company's customers, clients, partners, associates,
representatives, talent, affiliates, actors, performers, and any and all of their affiliated, related,
parent and subsidiary entities, including but not limited to Michael Jackson (collectively,
"Customers").

1. **Confidential Relationship.** I understand that I may be involved with information and
   materials of a highly sensitive nature, which must be carefully protected. I further understand
   that my employment or involvement creates a relationship of confidence and trust between
   me and the Company and its Customers, that requires me to treat with special care any and
   all information that is applicable to any of the business of the Company or the business of any
   Customers of the Company including but not limited to Michael Jackson, whether I learn it
   from the Company or from any Customer of the Company, or from any other source, at any
   time during the period of my involvement or employment. I further agree not to discuss any
   information or supply any information to any source. I understand any information divulged
   would be considered damaging to the Company, whether it be during the coarse of my
   employment or involvement with Company, or after my employment or involvement with the
   company. I agree by doing such would make me personally liable for any and all damages
   this may cause.

2. **Company and Customer information and Material.** I recognize that the Company is
   engaged in all aspects of the Entertainment Business, including but not limited to all aspects
   of the video gaming business, including but not limited to programming, producing, creating
   and marketing video games or any other type of electronic amusement  medium whether in a
   format known or known at this time, and authoring, publishing, including but not limited to
   books and children's books both animated and written, films, including but not limited to short
   and feature films either animated or visually shot, music, including but not limited to albums
   and soundtracks, Videos, including but not limited to music videos, short stories or
   documentaries, and Merchandising, including but not limited to products it either creates or
   has licensing rights to, for it's Customers or the general public. I recognize that the company
   possesses and will continue to possess valuable information that has been created,
   discovered, developed, or otherwise known by the Company (including information, designs,
   marketing plans, images, logos, names, and other materials created, discovered or
   developed by me, or  made known to me, as a result of my employment  or involvement by
   the Company). I understand that the property rights and information that has commercial
   value in the business in which the Company is engaged have been assigned or otherwise
   conveyed or disclosed to the Company.

3. **Non- Disclosure.** During and after my employment or involvement by the Company, I agree
   that I will not disclose any of the information described in the preceding paragraph or any
   other trade secrets or proprietary information or material of the Company or its Customers
   including but not limited to Michael Jackson ("Confidential Information:"), to any person or
   entity other than as is necessary I carrying out my duties on behalf of this Company and the
   above referenced Company, without first obtaining the Company's written consent. I will take
   all responsible precautions to prevent inadvertent disclosure of any Confidential Information.

1



4. **Assignment.** I hereby assign to the Company all rights I have or may acquire in Confidential Information. All Confidential Information will be the sole property of the Company and/or a particular Customer, and the Company or the particular Customer will be the sole owner of any patents, copyrights, trademarks, trade names, logos, designs, trade secrets, and any other propriety rights with respect to any and all the work conceived or performed by me in the course of my employment or involvement. If requested by the Company or any of its Customers, I will execute a certificate of acknowledge of the foregoing assignment, and such other instruments or documents as the Company or its Customers may request to register, establish, maintain, perfect or defend the exclusive rights of the Company or its Customers I or to such materials or information. I recognize that the Company may from time to time assign such Confidential Information to one or more of its Customers or Subsidiaries. In the event I should render services to the Company in connection with any Customer's project while I am not working as a regular full-time employee, or as a person with involvement in a project of the Company on the Company's premises, I hereby assign to the Customer all rights, title and interest in and all patents, copyrights, trademarks, trade secrets and other materials created.

5. **Non- Disclosure of Customer Information.** If requested by Company, I will also hold harmless strictly confidential the fact that I rendering services for a particular Customer and all information and materials supplied by such Customer or created by the Company in connection with a customer project. I understand that the Company has, by this Agreement, specifically requested strict confidentiality with respect to any and all services, information and materials in connection with any and all of it's Customers' projects.

6. **Return of all Material.** Except with prior written consent of the Company, I will not at any time take or retain any computer disks or software, hardware, designs, drawings, plans, specifications, sketches, notes, brochures, reports, slides, videos, films, film material, proposals, files, photographs, manuals, list of names, contracts or any other article or document for the purpose of photocopying or copying by any other means, or any photographic or audio or video recordings, or reproductions of any kind of any of the above, or any other material or equipment that belongs to the Company or any of its Customers, including but not limited to Michael Jackson. Even if the Company does not so request, I will return and deliver to the Company all such property to the Company upon termination of my employment or involvement. Unless otherwise requested in writing, all items must be returned to the address provided by Company.

7. **Employment At Will.** I understand that my employment or involvement with the Company is not for a specific term (Unless a previous written contract is in place, or a new contract specifies a term), and that I may be terminated with or without cause, and with or without advance notice, at the will of either myself or Company (Unless specific conditions are already in place, by a previous written Agreement). I understand that no Agreement contrary to at-will employment or involvement has been made with me by this Agreement, and that no such Agreement can be made with me unless it is in writing and signed by an authorized party on behalf of the Company. This Agreement does not change my at-will employment or involvement relationship, and the offering and execution of this Agreement does not constitute a guarantee or assurance employment (outside of an already existing employment contract). I understand that failure to execute this Agreement may result in the termination of my employment or involvement , if not yet hired, in a refusal to hire me. All offers of employment or involvement are conditioned on the execution of this Agreement.

8. **Injunctive Relief.** I agree that the Company will be entitled, without waiving any additional rights or remedies otherwise available to the Company at law, in equity or by Statute, to injunctive and other equitable relief if I breach or intend or threaten to breach any of my promises set forth in this Agreement.

9. **Amendments.** I understand that this Agreement may not be altered or modified except by a written amendment signed by the both of us.

10. **Arbitration.** I understand that any controversy between us involving the construction or application of any of the terms, covenants or conditions of this Agreement will be submitted to arbitration in Los Angeles, California, on the request of either of us, and the arbitration will comply with and be governed by the provisions of the commercial arbitration rules of the American Arbitration Association.

11. **Attorney's Fees.** In any dispute between us, whether or not resulting in arbitration, the party who substantially prevails will be entitled to recover from the other party all reasonable cost, including, without limitation, reasonable attorney's fees.

12. **Counterpart Copies.** I understand that this Agreement may be signed in counterpart or duplicate copies, and any signed counterpart or duplicate copy will be equivalent to a signed original for all purposes.

13. **Entire Agreement.** I understand that this Agreement contains all representations and the entire understanding and Agreement between us. Correspondence, memoranda, and oral or written Agreements that originated before the date of this Agreement are replaced in total by this Agreement unless otherwise expressly stated in this Agreement.

14. **Gender and Number.** As used in this Agreement, the masculine, feminine, or neuter gender, and the singular or plural number, will include the others whenever the context indicates.

15. **Governing Law.** This Agreement will be governed by the and construed according to the laws of the State of California and this Agreement was made and performed in California.

16. **Headings.** The titles and headings of the various sections of this Agreement are intended solely for the convenience of reference and are not intended to explain, modify or replace any construction on any provisions of this Agreement.

17. **No Waiver.** I agree that if either of us fails to insist on the strict performance of any covenant or duty required by this Agreement, or to pursue any remedy under this Agreement, such failure will not constitute, a waiver of the breach or the remedy.

18. **Cumulative Remedies.** I agree that the remedies under this Agreement are cumulative and shall not exclude any other remedies to which either of us may be lawfully entitled.

19. **Severability.** If any part of this Agreement is determined to be illegal or unenforceable, all other parts will remain in effect.

20. **Full Understanding.** I have carefully read and fully understand all the provisions of this Agreement and I am voluntarily entering into this Agreement with the full knowledge of any rights that I may be waiving.

21. **Construction.** I understand that this Agreement has been negotiated and approved by the both of us and, notwithstanding any rule of maxim of construction to the contrary, any ambiguity or uncertainty in the Agreement will not be construed against either of us based upon authorship of any of the provisions hereof.

Dated: _3/12/01_      Signed: _____

Print Name: _CHRISTIAN ROBINSON_

SSN: _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_

Witness: _____      Date: _3/12/01_

3

**EXHIBIT "D"**

**TO THE DECLARATION OF**

**F. MARC SCHAFFEL**

## Non-Disclosure Agreement

By signing this document, I agree to all the terms of this Non-Disclosure Agreement (the "Agreement") as a regular employee or an independent contractor or confident of Fredric Marc Schaffel, AKA Fred Schaffel Productions, AKA Marc Schaffel, AKA F. Marc Schaffel Productions LLC. DBA Neverland Valley Entertainment, Neverland Valley Records, (the "Company"). I understand that this Agreement is an important part of the consideration for my involvement whether as an employee, independent contractor, consultant, or any role by the Company. I understand that, among other tasks, I may perform tasks related to the Company's work for and on behalf of the Company's customers, clients, partners, associates, representatives, talent, affiliates, actors, performers, and any and all of their affiliated, related, parent and subsidiary entities, including but not limited to Michael Jackson (collectively, "Customers").

1.  **Confidential Relationship.** I understand that I may be involved with information and materials of a highly sensitive nature, which must be carefully protected. I further understand that my employment or involvement creates a relationship of confidence and trust between me and the Company and its Customers, that requires me to treat with special care any and. all information that is applicable to any of the business of the Company or the business of any Customers of the Company including but not limited to Michael Jackson, whether I learn it from the Company or from any Customer of the Company, or from any other source, at any time during the period of my involvement or employment. I further agree not to <u>discuss</u> any information or supply any information to any source. I understand any information divulged would be considered damaging to the Company, whether it be during the coarse of my employment or involvement with Company, or after my employment or involvement with the company. I agree by doing such would make me personally liable for any and all damages this may cause.

2.  **Company and Customer information and Material.** I recognize that the Company is engaged in all aspects of the Entertainment Business, including but not limited to all aspects of the video gaming business, including but not limited to programming, producing, creating and marketing video games or any other type of electronic amusement medium whether in a *formal known or known at this time, and authoring, publishing, including but not limited to* books and children's books both animated and written, films, including but not limited to short and feature films either animated or visually shot, music, including but not limited to albums and soundtracks, Videos, including but not limited to music videos, short stories or documentaries, and Merchandising, including but not limited to products it either creates or has licensing rights to, for it's Customers or the general public. I recognize that the company possesses and will continue to possess valuable information that has been created, discovered, developed, or otherwise known by the Company (including information, designs, marketing plans, images, logos, names, and other materials created, discovered or developed by me, or made known to me, as a result of my employment or involvement by the Company). I understand that the property rights and information that has commercial value in the business in which the Company is engaged have been assigned or otherwise *conveyed or disclosed to the Company.*

3.  **Non- Disclosure.** During and after my employment or involvement by the Company, I agree that I will not disclose any of the information described in the preceding paragraph or any other trade secrets or proprietary information or material of the Company or its Customers including but not limited to Michael Jackson ("Confidential Information:"), to any person or entity other than as is necessary I carrying out my duties on behalf of this Company and the *above referenced Company, without first obtaining the Company's written consent. I will take* all responsible precautions to prevent inadvertent disclosure of any Confidential Information

1

4. **Assignment.** I hereby assign to the Company all rights I have or may acquire in Confidential Information. All Confidential Information will be the sole property of the Company and/or a particular Customer, and the Company or the particular Customer will be the sole owner of any patents, copyrights, trademarks, trade names, logos, designs, trade secrets, and any other propriety rights with respect to any and all the work conceived or performed by me in the course of my employment or involvement. If requested by the Company or any of its Customers, I will execute a certificate of acknowledge of the foregoing assignment, and such other instruments or documents as the Company or its Customers may request to register, establish, maintain, perfect or defend the exclusive rights of the Company or its Customers I or to such materials or information. I recognize that the Company may from time to time assign such Confidential Information to one or more of its Customers or Subsidiaries. In the event I should render services to the Company in connection with any Customer's project while I am not working as a regular full-time employee, or as a person with involvement in a project of the Company on the Company's premises, I hereby assign to the Customer all rights, title and interest in and all patents, copyrights, trademarks, trade secrets and other materials created.

5. **Non- Disclosure of Customer Information.** If requested by Company, I will also hold harmless strictly confidential the fact that I rendering services for a particular Customer and all information and materials supplied by such Customer or created by the Company in connection with a customer project. I understand that the Company has, by this Agreement, specifically requested strict confidentiality with respect to any and all services, information and materials in connection with any and all of it's Customers' projects.

6. **Return of all Material.** Except with prior written consent of the Company, I will not at any time take or retain any computer disks or software, hardware, designs, drawings, plans, specifications, sketches, notes, brochures, reports, slides, videos, films, film material, proposals, files, photographs, manuals, list of names, audio recordings, on any format, contracts or any other article or document for the purpose of photocopying or copying by any other means, or any photographic or audio or video recordings, or reproductions of any kind of any of the above, or any other material or equipment that belongs to the Company or any of its Customers, including but not limited to Michael Jackson. Even if the Company does not so request, I will return and deliver to the Company all such property to the Company upon termination of my employment or involvement. Unless otherwise requested in writing, all items must be returned to the address provided by Company.

7. **Employment At Will.** I understand that my employment or involvement with the Company is not for a specific term (Unless a previous written contract is in place, or a new contract specifies a term), and that I may be terminated with or without cause, and with or without advance notice, at the will of either myself or Company (Unless specific conditions are already in place, by a previous written Agreement). I understand that no Agreement contrary to at-will employment or involvement has been made with me by this Agreement, and that no such Agreement can be made with me unless it is in writing and signed by an authorized party on behalf of the Company. This Agreement does not change my at-will employment or involvement relationship, and the offering and execution of this Agreement does not constitute a guarantee or assurance employment (outside of an already existing employment contract). I understand that failure to execute this Agreement may result in the termination of my employment or involvement , if not yet hired, in a refusal to hire me. All offers of employment or involvement are conditioned on the execution of this Agreement.

8. **Injunctive Relief.** I agree that the Company will be entitled, without waiving any additional rights or remedies otherwise available to the Company at law, in equity or by Statute, to

2



injunctive and other equitable relief if I breach or intend or threaten to breach any of my
promises set forth in this Agreement.

9.  **Amendments.** I understand that this Agreement may not be altered or modified except by a
    written amendment signed by the both of us.

10. **Arbitration.** I understand that any controversy between us involving the construction or
    application of any of the terms, covenants or conditions of this Agreement will be submitted to
    arbitration in Los Angeles, California, on the request of either of us, and the arbitration will
    comply with and be governed by the provisions of the commercial arbitration rules of the
    American Arbitration Association.

11. **Attorney's Fees.** In any dispute between us, whether or not resulting in arbitration, the party
    who substantially prevails will be entitled to recover from the other party all reasonable cost,
    including, without limitation, reasonable attorney's fees.

12. **Counterpart Copies.** I understand that this Agreement may be signed in counterpart or
    duplicate copies, and any signed counterpart or duplicate copy will be equivalent to a signed
    original for all purposes.

13. **Entire Agreement.** I understand that this Agreement contains all representations and the
    entire understanding and Agreement between us. Correspondence, memoranda, and oral or
    written Agreements that originated before the date of this Agreement are replaced in total by
    this Agreement unless otherwise expressly stated in this Agreement.

14. **Gender and Number.** As used in this Agreement, the masculine, feminine, or neuter gender,
    and the singular or plural number, will include the others whenever the context indicates.

15. **Governing Law.** This Agreement will be governed by the and construed according to the
    laws of the State of California and this Agreement was made and performed in California.

16. **Headings.** The titles and headings of the various sections of this Agreement are intended
    solely for the convenience of reference and are not intended to explain, modify or replace any
    construction on any provisions of this Agreement.

17. **No Waiver.** I agree that if either of us fails to insist on the strict performance of any covenant
    or duty required by this Agreement, or to pursue any remedy under this Agreement, such
    failure will not constitute, a waiver of the breach or the remedy.

18. **Cumulative Remedies.** I agree that the remedies under this Agreement are cumulative and
    shall not exclude any other remedies to which either of us may be lawfully entitled.

19. **Severability.** If any part of this Agreement is determined to be illegal or unenforceable, all
    other parts will remain in effect.

20. **Full Understanding.** I have carefully read and fully understand all the provisions of this
    Agreement and I am voluntarily entering into this Agreement with the full knowledge of any
    rights that I may be waiving.

21. **Construction.** I understand that this Agreement has been negotiated and approved by the
    both of us and, notwithstanding any rule of maxim of construction to the contrary, any
    ambiguity or uncertainty in the Agreement will not be construed against either of us based
    upon authorship of any of the provisions hereof.

Dated: __8 / 7 / 2001__            Signed: _____

DL / SSN __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__           Print Name: __CHRISTIAN ROBINSON__

Witness: _____   Date: __8-7-01__

3

19

**EXHIBIT "E"**

**TO THE DECLARATION OF**

**F. MARC SCHAFFEL**

Nondisclosure Agreement

## NONDISCLOSURE AGREEMENT

EACH OF THE UNDERSIGNED understand that **F. MARC SCHAFFEL PRODUCTIONS LLC (The Company)** has disclosed or may disclose information relating to properties, composition or structure of the Company's products or proposed products or the development, manufacture or processing thereof or the Company's business, including, without limitation, that which will include a business and musical project with **Michael Jackson (the "Artist")**, which to the extent previously, presently, or subsequently disclosed to the undersigned is hereinafter deemed to be "Proprietary Information" of the Company.

IN CONSIDERATION OF the parties' discussions and any access the undersigned may have to Proprietary Information of the Company, the undersigned hereby agrees as follows:

THE UNDERSIGNED AGREES (i) to hold the Company's Proprietary Information in confidence as a fiduciary and to take all reasonable precautions to protect such Proprietary Information (including, without limitation, as to any of the undersigned employees with respect to this most confidential material), (ii) not to divulge any such Proprietary Information or any information derived therefrom to any third person (except subject to the conditions stated below), (iii) not to make any use whatsoever at any time to such Proprietary Information for the benefit of any person other than the Company or

**PAGE ONE OF FIVE**                    Initials: C. R.

21

**Nondisclosure Agreement**

as expressly contemplated by the Company, (iv) not to remove or export from the United
States or reexport any such Proprietary Information or any direct product thereof except
in compliance with all licenses and approvals required under applicable export laws and
regulations, and (v) not to copy or reverse engineer any such Proprietary Information.
Any employee or consultant given access to any such Proprietary Information must have
a legitimate "need to know" and shall be similarly bound in writing.

THE UNDERSIGNED UNDERSTANDS and acknowledges that the Company is
not making any representation or warranty, express or implied, as to the accuracy or
completeness of the Proprietary Information, and neither the Company nor any of its
officers, directors, or agents will have any liability to the undersigned or any person
resulting from the undersigned's use of the Proprietary Information.

THE UNDERSIGNED ACKNOWLEDGES and agrees that all Proprietary
Information and its intangible media delivered by the Company to the undersigned shall
be and shall remain the sole and exclusive property of the Company. Nothing contained
in this Agreement shall be construed as granting or conferring any rights by license or
otherwise, expressly, impliedly, or otherwise for invention, discovery, copy or
improvement made, conceived or acquired prior to or after the date of this Agreement.
The undersigned also agrees, if applicable, to promptly and fully disclose to the Company
any creation, invention and/or copyrightable work or authorship which any employee of
the undersigned may make, whether alone or jointly, resulting from the use of the

**PAGE TWO OF FIVE**                    Initial: _____

22

Nondisclosure Agreement

Proprietary Information, that all rights in any such invention and/or copyrightable work or authorship will belong solely to the Company and that the inventor(s) and/or author(s) thereof will execute any documents required to so reflect this.

THE UNDERSIGNED WILL NOT disclose to any person the fact that the Proprietary Information has been made available to the undersigned or the existence or subject matter of the Proprietary Information or of the negotiations or business relationship with the Company.

IMMEDIATELY UPON A REQUEST by the Company at any time, the undersigned will turn over to the Company all Proprietary Information of the Company and all documents or media containing any such proprietary Information and any and all copies, disks, computer files or backup tapes, summaries or extracts thereof, if any. The undersigned understands that nothing herein (i) requires the disclosure of any Proprietary Information of the Company, or (ii) requires the Company to proceed with any proposed transaction in connection with which Proprietary Information may be disclosed.

THE UNDERSIGNED ACKNOWLEDGES the uniqueness of the Proprietary Information and that the only purpose of disclosure of the Proprietary Information, including but not limited to, the listening to or hearing of, any musical recording is for the purpose of a possible business venture. The undersigned acknowledges the he/it has no interest whatsoever in said Proprietary Information.

**PAGE THREE OF FIVE**

Initials: _C. P.—_

23

Nondisclosure Agreement

THE UNDERSIGNED ACKNOWLEDGES and agrees that due to the unique nature of the Company's Proprietary Information, there can be no adequate remedy at law for any breach of its obligations hereunder, that any such breach may allow the undersigned or third parties to unfairly compete with the Company resulting in irreparable harm to the Company and, therefor, that upon any such breach or any threat thereof, the Company shall be entitled to appropriate equitable relief in addition to whatever remedies it might have at law and to be indemnified by the undersigned from any loss or harm, including, without limitation, attorneys' fees, in connection with any breach or enforcement of the undersigned's obligations hereunder or the unauthorized use or release of any such Proprietary Information. The undersigned will notify the Company in writing immediately upon the occurrence of any such unauthorized release or other breach of which it is aware. In the event that any of the provisions of the Agreement shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid or unenforceable, such provisions shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect. This Agreement shall be governed by the law of the State of California without regard to the conflicts of law provisions thereof. This Agreement supersedes all prior discussions and writings and constitutes the entire agreement between the parties with respect to the subject matter hereof. No waiver or modification of this Agreement will be binding upon either party unless made in writing and signed by a duly authorized representative of such

**PAGE FOUR OF FIVE**          Initials: C. N

Nondisclosure Agreement

party and no failure or delay in enforcing any right will be deemed a waiver.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day

and year set forth below.

August
~~April~~ 8 , 2001

By: _CHRISTIAN ROBINSON_
Name: _____
Title: _____
Company: _CORE DREAM PRODUCTIONS_
Address: _424 E. 12000 S._
_____ _DRAPER UT 84020_

J. Man (dunil 8-8-01

**PAGE FIVE OF FIVE**

25

**EXHIBIT "F"**

**TO THE DECLARATION OF**

**F. MARC SCHAFFEL**

Dec 20 04 11:59a

02/01/2003 15:25 FAX 3656940                    Hale Lane                                    P.8

⌀002

## ASSIGNMENT AGREEMENT

This Assignment is made on this ⊤ day of February, 2003 by and among MJJ Productions, Inc. and Michael Jackson ("Assignee"), and Hamid Moslehi and I Films, Inc. ("Assignor").

In consideration of the covenants, representations and warranties set forth herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      Assignors hereby convey, transfer and assign to Assignee its successors and assigns, Assignors' entire right, title, license and interest in, to and under certain film footage known as the "Martin Bashir Footage" including, but not limited to, all foreign, federal, state, and common law rights, in and to such footage and any derivative works created therefrom, together with all rights and privileges granted and secured thereby, including (i) any moral rights, (ii) the right to sue and recover for any past infringement, and (iii) to use, reproduce, display, publish, prepare derivative works of and otherwise exploit in any medium whatsoever (now known or hereafter developed), said rights to be held and enjoyed by said Assignee, for its own use and benefit of its successors, assigns or other legal representatives as fully and entirely as the same would have been held and enjoyed by said Assignor if this Agreement and sale had not been made.

2.      Assignor hereby agrees to execute any and all documents and do any such further acts that shall be required in order for Assignee to secure, perfect and obtain all right, title and interest to the Relevant Property.

IN WITNESS WHEREOF, Assignors hereby execute this Agreement on this ⊤ day of February, 2003.

ASSIGNORS:

_____
Hamid Moslehi

_____
I Films, Inc.
By:     Hamid Moslehi
Its:    President

27

## ASSIGNMENT OF RIGHTS

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Hamid Moslehi and I Films, Inc. (the "Assignor") agree to the following:

1.    Assignor hereby conveys, transfers and assigns to MJJ Productions, Inc. and Michael Jackson ("Assignee"), its successors and assigns, Assignor's entire right, title, license and interest in, to and under certain film footage known as the "Martin Bashir Footage" including, but not limited to, all foreign, federal, state, and common law rights, in and to such footage, and any derivative works created therefrom, together with all rights and privileges granted and secured thereby, including, but not limited to, (i) any moral rights, (ii) the right to sue and recover for infringement, whether past or future, and (iii) to use, reproduce, display, publish, prepare derivative works of and otherwise exploit in any medium whatsoever (now known or hereafter developed), said rights to be held and enjoyed by said Assignee, for its own use and benefit of its successors, assigns or other legal representatives as fully and entirely as the same would have been held and enjoyed by said Assignor if this Agreement and sale had not been made.

2.    Assignor hereby agrees to execute any and all documents and do any such further acts that shall be required in order for Assignee to secure, perfect and obtain all right, title and interest to the Relevant Property.

IN WITNESS WHEREOF, Assignors hereby execute this Agreement on this ⊤ day of February, 2003.

ASSIGNORS:

_____
Hamid Moslehi

_____
I Films, Inc.
By:    Hamid Moslehi
Its:    President

::ODMA\PCDOCS\HLLAS8VG\1\1

28

CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2010, I electronically filed the foregoing **DECLARATION OF F. MARC SCHAFFEL IN SUPPORT OF PLAINTIFF F. MARC SCHAFFEL PRODUCTIONS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(1) and 12(b)(6)** with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DEBRA J. COLEMAN